Good morning. Please be seated. The first case on our docket this morning is 20-50313. Ms. Keegan? Good morning. Good morning. May it please the Court? You can take your mask off so we can understand you. My name is Kelly Keegan and I represent Appellant Isleta del Sur Pueblo. This is a federal Indian law property rights case that belongs in federal court based on federal question jurisdiction. Isleta del Sur Pueblo is a federally recognized Indian tribe that is asserting property rights to 111 acres of tribal land that is protected under federal law. When the district court dismissed the Pueblo's complaint for lack of jurisdiction based on a facial attack, it erred in three ways. First, the district court failed to apply Rule 8's plausibility standard, and as a result, it erred in ruling that the Pueblo's complaint does not assert aboriginal title and therefore was not a basis for federal question jurisdiction. Second, the district court erred by ruling that for purposes of determining jurisdiction under Rule 12b-1, the Pueblo's property right to the 111 acres based on its Spanish grant title does not exist because there has been no federal confirmation of that property right. Third, the district court dismissed the Pueblo's complaint for lack of jurisdiction, and after that, the district court erred by refusing to allow the Pueblo to amend. Because the dismissal was based on a facial attack, the district court was required to take the well-plaid factual allegations of the complaint as true and view them in the light most favorable to the Pueblo. Review of a facial attack is limited to whether the complaint is sufficient to allege jurisdiction. The Pueblo's complaint asserts possessory interest in the 111 acres deriving from two independent sources, aboriginal Indian title and Spanish grant title. I'll first briefly discuss the district court's errors with regard to aboriginal Indian title, and then address the district court's error with regard to the Spanish grant title issue. First, there is no dispute that aboriginal Indian title is a basis for federal question jurisdiction. That has been well established by the Supreme Court. The only question is whether the district court erred in ruling that the Pueblo's complaint does not assert that claim. The complaint alleges that the Pueblo is a Native American Pueblo, that the 111 acres at issue was used by the Pueblo before receiving a grant from Spain and continues to be used by the Pueblo, and that the property has never been vacated or abandoned by the Pueblo. Those allegations are at paragraphs 1, 25, 26, and 29 of the complaint. Under Rule 8's liberal pleading standard and Twombly and Iqbal's plausibility standard, those allegations are sufficient to assert a federal common law cause of action based on possessory interest to the land. Why doesn't the complaint just flat out state that they're proceeding under an aboriginal title? I mean, it doesn't do that. Your Honor, I will agree that the complaint does not have a heading that says aboriginal title, but the complaint does contain sufficient allegations to raise that claim. But it alleges the Spanish land grant, right? It alleges both. Can you proceed under both? I mean, can you have aboriginal title as well as a land grant? Yes, you can, Your Honor. What's your best case on that? I think they're both equally strong. So, under federal common law, Indian tribe can assert possessory interest to land based on aboriginal Indian title or based on any other type of underlying title. Here, it's a Spanish grant title. I'm sorry. Go ahead. How does that go to time immemorial? I mean, isn't that the standard for aboriginal title? So, that was one of the errors by the district court. And I think it's misunderstanding of the elements of aboriginal title led it to its ruling that the complaint does not plead aboriginal title. I think that is key. So, the district court ruled that in order to establish aboriginal title, an Indian tribe must prove possession from time immemorial until the colonists arrive. So, that's the exact language that the district court used. But, of course, I mean, there's a factual problem here that the Pueblo didn't occupy this land from time immemorial. They had been moved there by the Spanish. So, just because they're an Indian tribe, can they say they have aboriginal title even when they're just as much newcomers as the Spanish? Yes, they can, Your Honor. What's your best case? I repeat what Judge Wilson said. So, Your Honor, in order to establish aboriginal title, an Indian tribe must prove actual, exclusive, and continuous use for a long time. And that for a long time, I think, is what you're focusing in on. So, the courts have held that for a long time is it's case and fact specific. And so, there is no set, like, okay, it has to be 50 years or it has to be 100 years. Aboriginal means as a result of original. It means back to time immemorial, which is what the Oneida cases talked about. So, you're redefining aboriginal? No, Your Honor. There are cases. Well, cite me, cite us a case. Okay. So, I will. So, Your Honor, I would cite to Sac and Fox tribe of Oklahoma v. United States. And in that case, the Sac and Fox test is basically what established the elements of aboriginal title. What's the, that's the old, old case, right? I'm sorry, Your Honor. It's an aboriginal case, right? Yes. Before Oneida. Yes. Yes. Correct. So, the test has been used in occupancy for a long time. And it doesn't, a tribe can be relocated and establish aboriginal title. So, the tribes in Oklahoma have aboriginal title? It would depend on the facts if they could prove use in occupancy for a long time under this test. No, they have title because the government created reservations for them pursuant to federal law. I mean, that's the McGirt case. Yes. So, those are not aboriginal, but those tribes were transferred from other places for the most part. Yes, and there are, I believe it's a seminal case, but I would have to get you the site. But there are instances where tribes have been relocated and have been able to assert an aboriginal title claim. Are there instances where there is a land grant, as in here, where aboriginal title is also sustained? I'm not sure about that, Your Honor, but what I would say to that is there are cases where, so tribes can assert possessory interests to land on several different bases. It can be aboriginal title. It can be a congressional act. It can be an executive order. Here, it's a Spanish land grant that was received from a prior sovereign. But the complaint reads like it's a suit to acquire title. I mean, back in Mississippi, where I'm from, there are Spanish land grants, especially on the Gulf Coast, that go back to sort of an original grant per United States, but those aren't aboriginal title cases. They're title cases where you prove a chain of title. Isn't that the best reading of the complaint that's at issue here? So, Your Honor, there are the Pueblos asserting possessory interests to this land based on two different bases. One absolutely is the Spanish grant title. The other is aboriginal title. Excuse me. Would you tell me where the phrase aboriginal title appears in your complaint? That term is not used in the complaint, Your Honor. So how could a court reading the plain language of the complaint infer that you're claiming, your clients are claiming aboriginal title? Since that's a term of art and legal, it's like leaving out a claim, is it not? I don't think so. Rule 8 doesn't require that you use a specific term or a statute number, and the allegations in the complaint are sufficient to plead aboriginal title, and the other purpose of Rule 8 is was the city put on notice by the allegations? Well, I could see that if we were construing a complaint liberally on behalf of a pro se client, but if we're construing, let's say, a complaint in a diversity action where there are two or three different possible claims relating to personal injury, we're not going to make up a statutory claim or a common law claim for strict liability if the plaintiff only pleads negligence. So tell me why your case is any different from that kind of defect. Well, I think, Your Honor, the allegations in the complaint that we have a Native American Pueblo that they used and occupied the land for a long time, that those allegations sufficiently plead the aboriginal title claim, and we know that the city understood the complaint to do that because in its first answer it pled a defense to aboriginal title, and then in its second amended answer about a year later it again pled the defense to aboriginal title. But didn't the plaintiffs move to strike that defense because it wasn't an issue? No, the plaintiffs did not move to strike it. What happened was the city pled defenses to it. Discovery was conducted on that claim. But I thought there was something in the record where the plaintiff said, no, we're proceeding under the 1751 land grant. No, Your Honor. Okay. Yeah, no. So there was discovery on aboriginal title, and the Pueblo named expert witnesses, an archaeologist, an anthropologist, and it was months before the trial was scheduled. At that point the city filed a motion in limine asking that the issue of aboriginal title not be allowed to come in at trial. And that's the first time that the city had asked that that claim not be considered. But the city, like I said, had pled a defense to it immediately in its initial answer and then in its amended answer. Well, what do you do with the fact that the district court construed your complaint as a state law action to acquit title? Yes, Your Honor. Which does not arise under federal law. Correct. So that's one of the errors by the district court, because the Pueblo's claims do not arise under state law. And there are several reasons for that. So as we've been discussing, an Indian Pueblo's possessory interest in land, where they're asserting aboriginal title and then also asserting an interest in the land based on Spanish grant title, that's a federal common law cause of action. And additionally, because it's an Indian tribe that's the plaintiff, federal laws apply to its lands, and federal laws prohibit alienation of its land. What's your best case for that? In paragraph one of the complaint, Your Honor, the complaint alleges that Zotadel Sur is a federally recognized Native American tribe and that because of that status, all the laws of the United States... I'm sorry. Go ahead. Again, I'm asking you to please cite us a case for that. So as an Indian Pueblo, federal laws apply to the Pueblo, and federal laws protect Indian tribes' land from alienation. And so that's another reason that there's federal question jurisdiction here. Point in the complaint where that's alleged, that the non-conveyance restrictions are alleged. So where it's in paragraph one where the complaint... That says you're an Indian tribe. What about the law, the specific law that prohibits conveyance? So that statute number is not cited in the complaint. Is the name of the statute? No. It's not mentioned. Tell me in the complaint where this is alleged. No, the statute number and the name of the statute is not alleged, but the complaint, when it's taken as a whole, because you have an Indian tribe, and in that paragraph one, the Pueblo is saying, based on that status, all the privileges and immunities of federal law apply to it. That includes protection of its land. But that doesn't mean that every possible federal claim that would accrue to an Indian tribe is asserted in the complaint. You have to assert it, correct? Yes. I mean, I'm looking at paragraph 21 in the complaint, and I'll submit that that's the only thing I could see that might possibly. It mentions the Texas legislature conveying the land, I guess, to the city. Is that sufficient to assert that claim? No, Your Honor. I see my time has expired. Can I complete my answer to your question? Yes. Okay. So, no, it would be the complaint taken as a whole, because you have an Indian Pueblo that's asserting. So this is limited to asserting rights in land. That's what is at issue here. And when an Indian tribe is asserting rights to land, whether or not federal law prohibits alienation of that land is at issue, and we know that the city understood that to be an issue, because, again, it was put on notice of that by the pleading. We know that because it pled a defense specific to the federal law. We've come a long way from the face of the well-pleaded complaint when we're saying that the defense that was ultimately raised in response to the pleaded complaint raised defensively the issue that should have been in the well-pleaded complaint. Well, Your Honor, what I would say to that is that there are allegations. There were allegations in the complaint sufficient to put the city on notice that because you have an Indian Pueblo that's asserting rights to land, federal law is at issue. Okay. Thank you. Thank you. Save some time for rebuttal. Thank you. Thank you. Mr. Walker. Good morning, and may it please the court. The principal question before the court is really whether the lawsuit that the Pueblo filed is one to quiet title in land in El Paso, Texas, that belongs to the city of El Paso, and whether that should have been brought as a state court action rather than as a federal court action. We submit to the answer to that question is absolutely yes. Now, both factually and procedurally, it's very clear that this case was put together as an action to quiet title. All you have to do is look at the title of the original complaint, which says it's a verified complaint for declaratory judgment confirming title to real property. The relief that's requested both under the discussion of jurisdiction and venue and for the relief toward the end of the complaint says that they are simply seeking a declaratory judgment confirming title to real property deriving from a Spanish land grant. So that's what the case was about in the well-pleaded complaint. We know that the 111 acres involved in this particular lawsuit against the city of El Paso is simply a part of a much larger piece, some 8,100 acres to which the Pueblo also claims title for the same reasons. We know that the 111 acres involved in this particular lawsuit includes Blackie Cheshire Park, which is about a 60-acre park that's been in use for many decades. We know that with respect to this particular 111 acres that the Pueblo has neither occupied it nor used it nor done anything to it for well over 100 years. We also know that in terms of what is sought to be done here, the Pueblo seeks to change the title, and that's simply an action-acquired title. Now, we also know from a perspective standpoint, kind of why are we here today in 2021, we know that the Pueblo had not achieved any federal recognized status for a very long time. It was not until 1968 that there was a statute, that there was a bill passed in Congress that recognized some degree of federal status that said, okay, Texas, you're responsible for them. So it wasn't until 1987, under the Restoration Act at that point, that the Pueblo achieved a greater recognition under federal law, at which point there was a reservation ceded of about 100 acres, I think it was, of some limited amount of self-governance recognized, and there was also the statement made at that point that from that point going forward, that if there was any conveyance of real property or any acquisition of real property, it would be done in the same manner which a private person would do so under the state of Texas. Now, we know that this lawsuit is all about, if I were looking at this initially in the well-pleaded complaint, what's it about? It's about a claim that their title derives from the 17, the alleged 1751 Spanish land grant, nothing else. So we would know that in framing the answers to this that there is not a claim that's stated in the complaint that is based upon aboriginal possession, but here they say that whatever rights that they had were preserved pursuant to the Treaty of Guadalupe Hidalgo in 1848. To the extent that anybody in that area had any rights to property, the purpose of this Section 8 of the Treaty of Guadalupe Hidalgo was simply to say, well, look, if you already have property rights in this particular area, then they're not affected. So whatever you have, you have to go deal with them elsewhere. Now, we also know, it's undisputed that in this case, the district court dismissed the lawsuit without prejudice. We also know that at no point after the dismissal without prejudice did the Pueblo ever decide, okay, well, instead of attempting to amend, let's go file another federal lawsuit next week or the next month or any time. It's also undisputed that at no point did the Pueblo ever seek to file a state court lawsuit that would seek to quiet title. Now, their suit to quiet title here is simply not one that arises under federal law in order to confer federal jurisdiction. Of course, we'd look under the arising under standard in which either the claim has to be derived from a federal law, common law or statutory, which doesn't exist here, or their right to relief would necessarily depend upon the resolution of a substantial question of federal law, which doesn't exist here. They don't discuss it in their briefing, but of course the declaratory judgment act under which they sued in the original complaint doesn't confer jurisdiction. There has to be a predicate cause of action. Okay, so what do they say in the complaint about a predicate cause of action? Nothing really. Well, we know that there is no federal common law or statutory cause of action to quiet title because the cases say for a long, long time that this is really something, as Judge Wilson noted, that this is something that's been in the bailiwick of the state courts for a very, very long time. In Texas... What about paragraph 21 in their complaint? All that talks about is what Texas did in terms of establishing what's... They talk about the Ysleta land grant, and the land grant is to the inhabitants of the town of Ysleta. That's 1751. That's the 1854 grant from the state of Texas. Oh, got it, okay. Yeah, so the state of Texas in 1854 said, okay, so we're going to make sure that there's this grant that the residents, the people of the town of Ysleta... Geographically speaking, in El Paso County, you have a multiple small town within the county. Ysleta is now kind of part of the whole conglomerate of El Paso, but it is a separate incorporated town. It's been there for a very, very long time. But they say that the Texas legislature purported to transfer title to the Pueblos lands. I mean, is that enough for an INIA claim? I don't see that. I don't see it from the face of the pleadings. You know, it's not a claim that... First of all, if they're going to look at an INDIA Non-Intercourse Act claim, it would have to be based upon aboriginal title. That's the way I understand the application of the Non-Intercourse Act is. That's not pleaded here, and there's certainly no fact to support that. You know, so the complaint is an alienation without consent of the sovereign. I don't see that as enough here to raise that issue. What of council's position, council opposite's position, that they can proceed under aboriginal title theory as well as the 1751 land grant theory? I don't understand that. I don't understand how you would do that, either you have one or the other. I mean, they would seem to... If you say that you derived your property rights under the alleged 1751 Spanish land grant, then that means you didn't really have aboriginal title. Well, they do say they used the land before the land grant. They do say that, and they also indicate that they shared that same land. They were transported there by the Spaniards late in the 17th century, and they shared the space with the Spaniards, the mission, a number of other pueblos, and a lot of other people along the way. So I don't see how that really supports any sort of aboriginal title claim, nor does it give the city notice under the well-pleaded complaint that it's going to be defending an alleged aboriginal title, nor does it provide a basis for federal question jurisdiction. Why did the city assert those defenses? I'm sorry. Why did the city assert those defenses that council referenced? I'm not sure. I wasn't involved in that part of the team at that time. I think that at some point, you know, as a lawyer, you've got to be proactive and defensive, and the issue of the lack of jurisdiction was not originally raised as a 12B1 motion. I might have done that differently, but I wasn't there, and I would imagine that the reason they raised those was to make sure that they have all grounds covered in case something came up. We do know, for example, the court raised, Judge, you raised the issue earlier, that at the time when the city sought leave to amend its answer, the Pueblo did at that point say, no, we can't do that because this is not an aboriginal title claim, that this is a claim derived from a Spanish land grant. Where is that in the record? I felt like I was confused about that, but I remembered something along those lines. I can't tell you except it's in my brief. Okay. We can find it then. It's right there, and I do refer to that. If you find it, would you send that to us in a letter, please? Yes, Your Honor. Thank you. Absolutely. So anyway, we were talking about the predicate causes of action. So with no federal suit to quiet title, the only thing remaining would be state. And Texas Supreme Court has said for a long time that no matter how you slice it, no matter what you call it, that a trespass to tri-title claim is the exclusive method in the state of Texas to adjudicate disputed claims to title and real property, period. As a result, Chapter 22 of the Texas Property Code was developed from the common law, and nearly 30 rules of procedure, starting at Rule 783, govern how do you handle trespass to tri-title cases. The Texas Supreme Court, beginning to talk about how this is handled in Texas, says that you can't bring a declaratory judgment action in order to try to obtain attorney's fees. That's not an end around that's available to a plaintiff seeking to quiet title. And so it's just a trespass to tri-title case. Okay, so they don't talk about that in their briefing. We won't go through it in detail, but that's a remedy that's available to the Pueblo if they chose to do it. Keeping in mind also that this is really a test case. This 111 acres in question is really just a small sliver of the total number of acres involved. There's some 8,000 other acres to which they claim title on the same basis. That land has been occupied for well over 150 years by all sorts of other people. Right now it's occupied within the quarter mile around this Wacky Cheshire Park. You've got thousands of residents and apartments and homes, and you've got businesses and manufacturing facilities. There's a police station nearby. There's a school nearby. There are churches nearby. So if the Pueblo ever decided to try to take on Walmart, for example, which is just down the road with huge space and huge parking lot and all that kind of stuff, then they would have available to them the trespass to title statute in Texas. They could proceed if they could meet the requisite degree of proof. And they've always had that. Since the passage of the Treaty of Guadalupe Hidalgo, again, the Pueblo has been subject to the laws of the state of Texas. And so at any point since 1848, if they felt that they had some title issues or they needed to protect their property of any nature, of any size whatsoever, then they could have taken whatever land grants they had, whatever orders that they had, and they could have taken them to court to say, here's our title. We occupy this land. Keep other people off of it. That simply didn't happen. So since it's a state court cause of action, does the complaint allege anything else? No. The Treaty of Guadalupe Hidalgo does not provide for a cause of action, does not provide for a way to enforce the property rights that are set in the treaty that are unchanged. If you have some property rights, then the treaty does not change them. If you don't have property rights, the treaty doesn't change that either. So there's just no cause of action deriving from that. So at that point, there's still no... Well, they disclaimed that in their reply brief, didn't they? That's correct, Your Honor. Well, then that's not before us. Okay. There is nothing here that would, when they were presenting their case in a trespass-deprived title case, there is nothing that presents a substantial question of federal law. The court's aware that courts in Texas have been handling title issues based upon Spanish land grants and Mexican land grants for well over 150 years. So there is nothing about either the Treaty of Guadalupe Hidalgo or anything else that would confer federal question jurisdiction because... The Pueblo disclaimed aboriginal title, its record 3691 to 92, in their response to the city's motion for leave to amend its answer to include an affirmative defense to aboriginal title. And the reason I'm bothering you with this is so Ms. Keegan can address this in rebuttal. The Pueblo claimed that the proposed answer by the city was futile because it defended against a claim of, quote, aboriginal Indian title, comma, not title derived from Spanish land grant. That's exactly right. Thank you. Now, whether that, you know, formally dooms aboriginal title, I don't know, but there it is. Thank you, Your Honor. There is simply no pleading in the original complaint of aboriginal title. There's no claim for federal common law breaches. Federal common law, as I understand it, and as discussed in the Oneida cases, relates to aboriginal title, not title derived from a Spanish land grant. I haven't seen any cases. If they exist, I just can't find them that equates a Spanish land grant with aboriginal title, nor have I seen any cases that equate this particular factual history of the relocation and occupancy of a mission by a small band along with a number of other bands and Spaniards and other settlers in the area for a period of time to equate to aboriginal title. I don't think there's any reason for the court to change the long-standing definitions of what constitutes aboriginal title. That's simply not called for in this case. By the same token, there is no pleaded claim for violation of the Non-Intercourse Act. We talked about that a minute ago about what is pleaded. The Non-Intercourse Act refers to the sovereign, and that's, again, pertaining to aboriginal title, which is not pleaded and simply is not factually supported here. The final point I'd like to address very briefly is the proposed amendment of the complaint. Now, here, the trial court considered everything in the record. The Pueblo asked for a complete overhaul of the complaint about a month after the final judgment was rendered in which they sought to add more than 40 paragraphs to what was a pretty short complaint, really recast the entire complaint in a different light, bring up new causes of action for breach of federal common law, breach of the Non-Intercourse Act, Section 1983, and a variety of other new allegations concerning facts that were, of course, at odds with what were both pleaded before. And I think that it's very clear that this court considers these motions for leave to amend and considers some of the factors such as whether there would be undue delay or bad faith or dilatory motive on the part of the movement, whether there's a failure to correct deficiencies, the prejudice to the opposing party, and the futility of the amendment. Well, the court did consider those, and it's apparent from the record the reasons why the court declined to allow the amendment. Starting with futility, the Pueblo had already pleaded themselves out of the case in federal court by saying that their rights derived from the Spanish land grant, which the district court in Guadarrama said were derived from state law. That's state law cause of action that doesn't belong to federal court. But this came some 30 months after the initiation of the lawsuit and after the parties had done extensive discovery, filed a lot of pleadings and motions, hired experts, took depositions, and to try to recast the case at that time would certainly be unfair and prejudicial to the city and certainly all of its taxpayers to have to deal with that. There's no clear reason why they delayed. The city had moved to amend its answer, did so. In 2019, the city moved for summary judgment including the allegation that there is no jurisdiction, and at that point, the Pueblo made no effort to attempt to replete. That would have been the appropriate time to do so if they had failed to figure it out before. But certainly at that point, the Pueblo should have said, okay, if we have a problem here, let's do it before there's a judgment. But they didn't. Instead, they chose to stand on their pleadings, await the judgment of the trial court, and only after they received an adverse judgment did they decide to try to amend in a wholesale manner. And that's a very significant reason, I think, why this court can find that there was no abuse of discretion. What was the standard the district court was required to follow? Was it Rule 15 or Rule 59? Well, this court has said that you consider both. And this court has said that you have to consider Rule 15 issues. And even if they're not explicitly stated, this court has said in the Allen v. Walmart case, if their reasons are apparent from the record, then the denial of the grant can be sustained. I think that's where we are here. So that's why we talk about these factors. In its response to the motion for leave to amend, the city addressed all those Rule 15 factors as well. So all of that was before the trial court considered everything. And even though it didn't go one by one through all of the Rule 15 factors as this court has delineated, it's apparent from the record the reasons why it did, and those do satisfy the 15A standards. For these reasons, we respectfully ask the court to affirm the decision of the trial. Thank you. Your Honors, first, with regard to the city's argument that the Pueblo's complaint does not raise federal question jurisdiction because the underlying claims to the declaratory judgment request are not based on federal law. Again, the Pueblo adamantly disagrees with that because here the complaint does raise federal question jurisdiction because the Pueblo is asserting possessory interest to Indian land and because it's a Native American Pueblo. And so the city's argument that this is just a plain, quiet title action under state law. If the Pueblo was not a party and if you had two private parties, yes, I would agree with that. But here, that's not what we have. We have a plaintiff that is an Indian tribe and is asserting... Let me just say, I'm sorry to interrupt. Let me just say, if this were, you know, John Smith asserting title derived from the Spanish land grant confirmed in the Treaty of Guadalupe Hidalgo or not and he filed suit to get this, to take title to this property, that would be a state law claim, right? I agree, Your Honor. The only distinction then, the only legally material fact on which you rely is that you're an Indian tribe and somehow that's different. And the Supreme Court has not treated the cases that way. It's more than that, Your Honor. It's the Indian tribe is a party and what it's asserting is possessory interest, which is a federal law. It's a federal common law cause of action under Oneida. So the courts have said, when you have an Indian tribe asserting possessory interest to land, it's been developed in case law that that's a federal common law cause of action. And then on top of that, when you have tribal land that is at issue, you have federal law that protects it. And so the city's position that the Indian Non-Intercourse Act prohibition on alienation only applies to aboriginal title, that is absolutely not correct, Your Honor. What's your best case for that? The language of the Non-Intercourse Act. So 25 U.S.C. 177... But you have to plead that, don't you? Well... Are we supposed to infer statutes when they're never pled and when a case is litigated for a year and a half or so? Your Honor, all the parties understood that to be an issue. We know that because there's an Indian tribe as a plaintiff asserting rights to tribal land. It's saying there was a conveyance and this is how the city is unlawfully... now has the title to the land. So there's a purported conveyance that was... You know, I really don't quite understand why you're here on appeal, because I suppose it's possible that there are claims that could be raised within the cognizance of the federal courts. I'm not sure, but maybe. And the district court dismissed without prejudice. And your whole argument here is based on entirely different theories than you pleaded. And therefore, if we look strictly at your pleadings, you could have spent this time going back into federal district court on those other claims. Your Honor, we believe that what's pleaded in the original complaint is sufficient to raise the claims and that the city was put on notice. But to your point, the Pueblo tried to resolve this by asking for amendment. The district court did apply the wrong standard and did not allow amendment. Had it allowed amendment, you're right, we would not be here today. You're also right that the Pueblo can refile this action because it was dismissed without prejudice. But the district court misinterpreted the law with regard to whether or not the Pueblo's grant title would have to be federally confirmed. That is a very serious error in the district court's ruling. And for jurisdictional purposes, it's possible, and there was a concern, it's possible that in a second action, the federal district court could look at that ruling and apply that same erroneous ruling with regard to the Spanish grant title. So the Pueblo felt that that needed to be corrected. I see that my time has expired. Thank you, counsel. We have your arguments.